Steven **BROTHER**, Plaintiff,

v.

**MIAMI HOTEL INVESTMENTS,
LTD.,** Defendant.

No. 02–23684–CIV..

United States District Court,
S.D. Florida,
Miami Division.

Aug. 9, 2004.

William N. Charouhis, Esq., William N. Charouhis & Associates, LLP, Miami, FL, Counsel for Plaintiff.

Michael A. Garcia, Esq., Fowler White Burnett, Miami, FL, Michael Buckley, Esq., Buckley & Fudge, St. Petersburg, FL, Co-counsel for Defendants.

### ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S COUNSEL'S VERIFIED APPLICATION FOR FEES AND COSTS

KLEIN, United States Magistrate Judge.

THIS CAUSE came before the Court upon Plaintiff's Counsel's Verified Application for Final Judgment for Attorneys' and Expert's Fees, Litigation Expenses and Costs ("Verified Application") (**D.E. No. 46**).[1] In addition to considering this motion for fees and costs, the Court also has considered the following materials submitted in support of or in opposition to the motion: Affidavit of Gil Haddad (Regarding Reasonable Attorneys' Fees) (**D.E. No. 48**); Defendant's First Response Memorandum to Plaintiff's Counsel's Verified Application for fees and costs (**D.E. No. 53**); Defendant's Notice of Filing Supplemental Authority in further support of its Response Memorandum (**D.E. No. 54**); Defendant's Notice of Filing Correspondence in further support of its Response Memorandum (**D.E. No. 56**); Defendant's Response to Plaintiff's Supplemental Application for Additional Fees & Costs (**D.E. No. 57**); Plaintiff's Notice of Filing Recent Authority Regarding Pending Motion (DE 46) (**D.E. No. 58**); Defendant's Response to Plaintiff's Notice of Filing Recent Authority (**D.E. No. 59**); Plaintiff's Memorandum in Reply to Defendant's First Response to Plaintiff's Counsel's Verified Application for fees and costs (**D.E. No. 61**); Plaintiff's Notice of Summary of Attorney's and Expert's Fees, Litigation Expenses and Costs Sought (**D.E. No. 66**); Plaintiff's Notice to Court of Related Motions/Memoranda (**D.E. No. 67**); Plaintiff's Second Notice to Court of Related Motions/Memoranda (**D.E. No. 77**); Plaintiff's Notice of Summary of All Attorney's and Expert's Fees, Litigation Expenses and Costs Sought (**D.E. No. 78**); Plaintiff's Counsel's Second Verified Supplemental Application for Fees, Litigation Expenses and Costs (**D.E. No. 79**); and Second Affidavit of Gil Haddad (Regarding Reasonable Attorney's Fees) (**D.E. No. 82**).

---

1. The parties consented to have a United States Magistrate Judge decide and issue a final order on this motion. (D.E. No. 74, 75.) The parties also agreed that the matter could be resolved on the moving papers, including supporting affidavits, without the necessity of a hearing. (D.E. No. 80.)

This is an application for attorneys' fees and costs arising out of an action by Plaintiff under the Americans with Disabilities Act ("ADA"). The case was settled with the entry of a Consent Decree (**D.E. No. 43**) which provided that:

> Defendant shall pay plaintiff's counsel, William N. Charouhis & Associates for all attorneys' fees, litigation expenses (including expert fees and costs) and costs incurred by the plaintiff in this matter. The amounts to be paid shall be established by counsel for the parties by separate letter agreement. If, however, counsel for the parties are unable to determine the attorneys' fees, including litigation expenses, expert's fees and costs to be paid, the amount to be paid shall be determined by the District Judge or a Magistrate Judge as the Court deems appropriate. . . .

> The parties agree that the Defendant does not in any way limit its right to challenge the reasonableness of the amount of expenses and attorneys' and expert fees claimed by Plaintiff's counsel incurred on behalf of the Plaintiff in connection with any of the matters set forth herein.

*See* Consent Decree at 30–31. Judge Martinez approved and ratified the Consent Decree on January 30, 2004. (D.E. No. 45.)

■ In accordance with the standards set forth in *Hensley v. Eckerhart,* 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), and *Loranger v. Stierheim,* 10 F.3d 776 (11th Cir.1994), the Court must consider the number of hours reasonably expended in the litigation, together with the customary fee charged in this community for similar legal services. These two figures are then multiplied together, resulting in a sum commonly called the "lodestar." Adjustments to the formula may be made under certain circumstances. *Hensley, su-*

*pra; Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

## Introduction

Before embarking on the traditional individual factor analysis, some general observations germane to this matter are appropriate. Many of these observations will be adverted to later in sections which analyze individual components of the fee award.

The ADA has laudatory purposes. It was enacted to assure no person would be discriminated against on the basis of disability in a number of specified areas. 42 U.S.C. § 12181 *et seq.* In order to assure the availability and willingness of lawyers to take on such matters, 42 U.S.C. § 12205 provides that the court may award the prevailing party a reasonable attorney's fee. The key word here is *reasonable.* The Act was never intended to turn a lofty and salutary mission into a fee-generating mill for some lawyers to exploit the statutory scheme to see how many billable hours they could cram into a case before it is either tried or settled. They do a disservice to the disabled, and to the vast majority of lawyers who carry out their duties under the ADA with skill, dedication, and professionalism.

This was a case of ordinary proportions and dimensions. It had no unusual features or unique characteristics. After determining that Defendant was not in compliance with the ADA, Mr. Charouhis immediately filed suit which resulted in the attorney's fee clock to begin ticking. No effort was made to communicate with Defendant and seek compliance before suit, despite the fact that the only remedy in the Act is injunctive relief. That is, aside from attorney's fees, which thus provides an incentive for protracted litigation as opposed to pre-suit or post-suit early settlement. All of these observations were made by the court in *Rodri-*

*guez v. Investco, L.L.C.,* 305 F.Supp.2d 1278 (M.D.Fla.2004), which also involved Mr. Charouhis.

But rather than fault Mr. Charouhis for immediately filing suit, which was his and Plaintiff's right, it is what occurred afterward that causes the Court its real concern.

After filing suit, Defendant claims it sought to quickly resolve the matter by complying with ADA requirements, and the ultimate settlement was substantially what Defendant had offered. Mr. Charouhis does not dispute this position in any of his responses on the fee issue.[2] He merely claims he got everything he asked for, and, naturally, does not reference the fact that he might have also obtained it all at the beginning of the case. Even if that were not the case, it does not vitiate or ameliorate what occurred during the prosecution of the litigation.

Mr. Charouhis' statement in his brief that his firm is one of the most "well-respected ADA plaintiff's firm in this jurisdiction," *see* Plaintiff's Verified Application at 13, is contradicted by the facts. In *Rodriguez, supra,* United States District Judge Presnell noted that in a three-year period in the Middle District of Florida, Mr. Charouhis has had 33 Show Cause Orders issued against him for his failure to abide by the court's orders. 305 F.Supp.2d at 1281 n. 10.

Mr. Charouhis has made his mark in this district as well. In *Brother v. Bank of America Corp.,* Case No. 02–23545–CIV–Moreno (S.D.Fla.2002), Judge Moreno reduced Mr. Charouhis' fees, stating in his Order dated January 15, 2004:

> The Court finds that due to unreasonable conduct, the demands from Plain-

tiff's Counsel must be reduced to accurately reflect the true costs of litigation had this case been prosecuted appropriately.

*Id.,* D.E. No. 33 at 2.

This Court had a similar experience with Mr. Charouhis. After stipulating by letters to a deposition date for his client, he and his client both failed to appear at the scheduled place and time. After a second failure, Defendant moved for sanctions and a hearing was conducted. Mr. Charouhis attempted to seize on a late notice of taking deposition, sent merely as a courtesy after the stipulation, to justify his position; he denied having stipulated to the date, despite the fact that the letters showed otherwise. This Court found Mr. Charouhis' explanation to be disingenuous, contrived, and in bad faith. Because Defendant complained that it had been repeatedly stymied in trying to depose Plaintiff, the Court then attempted to assist in setting a deposition date. This was followed with more equivocation in court by Mr. Charouhis on his client's and his own availability for deposition. After he complained that he didn't have his calendar with him, he was invited to call his office from the courtroom. After standing in front of the courtroom phone, he again equivocated, claiming he had just moved, and his office calendar was not up to date. The Court was thus required to intercede. After advising Mr. Charouhis that if he didn't call, the Court would set a firm date, Mr. Charouhis was suddenly able to get his calendar from his office. The Court entered an Order finding Mr. Charouhis' conduct in failing to appear unjustified, and further ruled that it would consider appropriate reductions of fees for his

---

**2.** He does attach letters from his firm to Defendant urging it to act on a proposed settlement, but these letters begin in mid-August 2003, eight months after suit was filed. He does not attach Defendant's responses to these letters. No reference is made to the claim of Defendant that Plaintiff sought to comply as soon as it was notified of non-compliance.

conduct both out of court and in court when Plaintiff made his final fee application. (D.E. No. 41.)

### Payment of "All Attorneys' Fees"

Plaintiff maintains that the agreement to pay "all attorneys' fees" contained in the Consent Decree entitles him to obtain everything he asks for. He argues that this language "constitutes the whole agreement between the parties." *See* Plaintiff's Verified Application at 5. This argument ignores the clear provision that

> [t]he parties agree that the Defendant does not in any way limit its right to challenge the reasonableness of the amount of expenses and attorneys' and expert fees claimed by Plaintiff's counsel incurred on behalf of the Plaintiff in connection with any of the matters set forth herein.

*See* Consent Decree at 31. The Court is thus empowered by the contract to determine what is a reasonable fee in this matter.

Defendant contends that since the attorneys' fee statute speaks in terms of "may," the Court is thus authorized to deny fees altogether to Plaintiff's counsel. This, too, overlooks the provision in the Consent Decree which states that Defendant "shall pay ... all attorneys' fees ...." *Id.* at 30. Defendant has stipulated to pay attorneys' fees subject to a determination of reasonableness. The Court will now proceed to make that appraisal.

### 1. Reasonable Hourly Rate

■ Mr. Charouhis started this case at a rate of $325 per hour. Seven days after filing suit, he raised his hourly rate to $360 per hour. One year later, during settlement negotiations just before the mediation which resolved this case, he raised it to $385 per hour. His associate, Ms. Barkus, was billed at an initial rate of $170 per hour. Immediately after suit was filed, her hourly rate was raised to $190 per

hour. A year later her rate was raised to $210 per hour just before the mediation. Mr. Charouhis has been practicing law for 19 years. He has been involved in ADA cases for the last eight years. Ms. Barkus was admitted to practice in 1998. She had been practicing for five years at the time of her last time entry on January 16, 2004. The extent of her ADA experience is unclear.

The fact that the case took a year to resolve does not justify an award based on two hourly rate increases, each coming fortuitously at a pivotal moment during the litigation. Moreover, as will be adverted to later, much of the delay was attributable to Mr. Charouhis. He should not reap the reward of the passage of time.

In addition, as the *Loranger* case noted, a court "is itself an expert on the question [of reasonable hourly rates] and may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment either with or without the aid of witnesses as to value." 10 F.3d at 781 (citing *Norman v. Housing Auth.*, 836 F.2d 1292, 1303 (11th Cir.1988)).

■ Based on the submissions of both sides, and the Court's independent knowledge and experience, the Court finds that a reasonable hourly fee for someone of Mr. Charouhis' experience of eight years in this field of law in this community, is a range of $250 to $300 per hour. The Court will nevertheless give Mr. Charouhis the benefit of the doubt, and find that an hourly fee of $325 is appropriate for this matter, that being the fee that was charged by him at the outset of the case. Hourly fees for someone of Ms. Barkus' experience range from $125 to $160 per hour. The Court will nevertheless give her the benefit of the doubt, and find an hourly fee of $170 to be appropriate for Ms. Barkus, the hourly rate set for her at the outset of the case.

## 2. *Hours Reasonably Expended*

■ Mr. Charouhis claims to have expended 76.1 hours for himself, and 51.3 hours for Ms. Barkus. Of Mr. Charouhis' 76 hours, approximately 20 to 25 of them were expended in preparing his fee application. That calculates to fifty hours for the case itself, and 20 to 25 more to show why his 50 or so hours for the case in chief (and to a much lesser extent, Ms. Barkus' 51) were reasonable. Surely the Act which was designed to assure access for the disabled was not also designed to assure excess for lawyers.

The Court finds that many of the hours expended by Mr. Charouhis and Ms. Barkus were unnecessary, redundant, and duplicative. The hours claimed for the fee application are totally disproportionate and grossly inflated. The two categories will be dealt with separately.

An examination of Mr. Charouhis' and Ms. Barkus' time records disclose that they are replete with unnecessary work and duplication. This was a straight-forward case with no unique legal or factual issues. The Court sees little need for two lawyers utilized as they were in this case, with one lawyer performing tasks, and invariably the other lawyer billing for reviewing the work of the other lawyer. If Mr. Charouhis is as good as he says he is, he should have been able to litigate this unexceptional case by utilizing the formulaic approach that served him so well in all the similar cases he handled without having to enlist the aid of Ms. Barkus to review his notes, work, and then perform and bill for so many routine tasks. Instead, the two of them reviewed each other's work, and now seek to charge their time for such redundancy to Defendant. For example, Mr. Charouhis attended a presuit inspection of the premises on November 13, 2002. Then Ms. Barkus expended 2.60 hours reviewing his notes of the inspection and drafting a cookie-cutter complaint virtually identical to those filed by these lawyers in *Brother v. Twin Harbors, Inc., et al.,* Case No. 03–10002–CIV–Moore–O'Sullivan, and *Brother v. Seabrook Dev. Prop., Inc.,* Case No. 02–23679–CIV–Moore–O'Sullivan, and to the numerous other complaints filed by these attorneys.[3] Then, in a game of billing badminton, the shuttlecock was returned to Mr. Charouhis, who then spent .8 hours reviewing and revising the complaint "drafted" by Ms. Barkus.

There are numerous other examples. On November 14, 2002, Mr. Charouhis researched the public records regarding ownership, public filings, and licenses of Defendant. On January 20, 2003, Ms. Barkus spent 1.10 hours reviewing those public records and again drafting a cookie-cutter motion to inspect the premises. On January 3, 2003, Ms. Barkus reviewed discovery and performed other legal work aggregated into one undifferentiated billing item.[4] There was no discovery which had been provided at that early stage of the litigation. Mr. Charouhis' response to this obvious error that the entry was for

---

**3.** A perusal of the complaints in all the cases discloses identical predicate paragraphs, identical recitations of the history of the Act, identical violations (with insignificant variations in a few of them), and identical demands for relief. Only the names are changed. Mr. Charouhis' claim that the other matters are all different, and are only the same insofar as they also happen to be against hotels, is belied by his own statement in his Notice of Filing Recent Authority Re-

garding Pending Motion (DE 46) [for Attorneys' Fees] in which he stated that the *"Twin Harbors* action was *identical* to the action herein." *See* D.E. No. 58 at 1.

**4.** This aggregation of unrelated tasks makes it impossible to determine and isolate time spent on individual tasks and renders it impossible to remove improperly billed items from the billing entry. This aggregation will be adverted to later.

reviewing the discovery prepared by Ms. Barkus on November 20, only substantiates the redundancy of the entry.

On March 5, 2003, Mr. Charouhis spent 1.10 hours reviewing the Court's standard Order Setting Civil Trial Date establishing the pretrial schedule (D.E. No. 6), and advising his client of the trial date. Again, there was nothing unusual about this unremarkable form six-page order which would require over an hour to read. On March 17, 2003, Ms. Barkus spent .9 hours drafting a letter to Mr. Brother regarding the trial and trial issues. How these issues were different from the identical issues listed in the other 50 or so lawsuits in which Mr. Brother was a plaintiff, and thus took almost an hour is baffling, to say the least. On June 5, 2003, Mr. Charouhis spent 6.90 hours reviewing ADA Accessibility Guidelines and Florida Guidelines and drafting a proposed Stipulation for Settlement. The next day he spent an additional .9 hours reviewing and revising the Stipulation. The Guidelines were not new and the Stipulation was not unique. Again, given Mr. Charouhis' expertise, prior familiarity with the Guidelines would seem to be a *sine qua non*, and the Stipulation was common in almost every respect to all his other cases. *See e.g., Glassroth v. Moore*, 347 F.3d 916, 919–20 (11th Cir. 2003) (noting that with a lawyer's significant experience in a particular area of law comes "knowledge, efficiency, and self-confidence, which should reduce the number of hours necessary for the task").

On September 16, 2003, Ms. Barkus spent 2.80 hours, among other things, drafting discovery responses. She failed to distinguish time spent on various tasks. On September 17, 2003, Mr. Charouhis spent 3.80 hours on a number of tasks, including reviewing Ms. Barkus' discovery responses. He, too, failed to distinguish time spent on this litany of tasks. The same tag team approach was used on September 19 and 21 by the two lawyers to review Defendant's responses to discovery. While there are cases approving billing for two lawyers working with one another, with each providing input of their own peculiar expertise, that principle does not apply here. There were no complex issues, no unique questions of law or fact, and no esoteric theories to be discussed and debated in this case. In short, there was no necessity for the supposed synergy of any expertise. As Mr. Charouhis himself pointed out, this case was identical to at least one other case. *See* footnote 3, *supra.* And as this Court stated, it was identical to many other cases.

■ There are numerous other entries where different items are strung together into one entry, making it impossible to determine how much time was spent on each. This mass burial system which effectively masks the ability to ascertain how much time was spent on the disparate tasks, and which makes it impossible to remove improperly billed items from the billing entry, puts a burden on the Court which it need not shoulder; thus Plaintiff has failed to carry its burden of showing the reasonableness of those items which are not properly delineated. Under such circumstances, the Court may disallow the entire amount. *Webb v. James*, 967 F.Supp. 320 (N.D.Ill.1997).

On November 5 and November 10, 2003, Mr. Charouhis spent .1 hours on each of those days reviewing the same Second Notice of Taking Deposition. They were for the same witness. How many times and how long does it take to digest a deposition notice? Apparently $72 worth of time.[5] Even though this item is small in compari-

5. Although Mr. Charouhis concedes in his reply memorandum of March 22, 2004, that at least one of these two time entries should be deducted, he still makes claim for both in his

son to the overall bill, it is a useful example in that it is much easier to isolate and pinpoint the excess because of its discrete and quantifiable nature. There was also a Third Notice of Taking Deposition of the same witness on November 10, which took Mr. Charouhis another tenth of an hour to review.

■ There are other redundant and unnecessary time entries, too numerous to detail. To do so would be a waste of judicial resources. But there is one other category of time entries that deserves special attention: billing for time entries which Mr. Charouhis seeks to recover from Defendant which deal with Defendant's efforts to have Plaintiff appear for his deposition. Plaintiff's counsel did everything he could to avoid the deposition, thus constantly delaying the entire case, and now has included in his bill hours of time charged for reviewing the motion filed against him, his own responsive memorandum, reviewing this Court's Notice of Hearing on Defendant's Motion, and reviewing the Order imposing proposed sanctions against him. (He also seeks to recover from Defendant fees in connection with a motion to compel filed by him which was denied by the Court.) As this Court noted, Mr. Charouhis' conduct in failing to abide by his stipulation and then engaging in duplicitous conduct in court resulted in a sanctions order. Allowing fees to Plaintiff in such instances would result in carte blanche to a litigant to file anything and everything in such cases, no matter how frivolous or groundless, regardless of whether the party won or lost the particular motion, as long as the party filing them is ultimately entitled to fees. This Court cannot accept such a billing practice.[6]

■ The Court has carefully reviewed the time records in this case, and finds that a reasonable number of hours that Mr. Charouhis spent on this matter is 33 hours. The remainder of the hours expended by him, as outlined above, were "excessive, redundant, or otherwise unnecessary," *Norman,* 836 F.2d at 1301 (citing *Hensley,* 103 S.Ct. at 1939–40, 103 S.Ct. 1933), or could not be adequately documented because the tasks were improperly lumped together. As for Ms. Barkus, the necessity of her level of involvement, or at least double billing for much of her work, in this case was questionable. The tasks she performed were either redundant or of such an assembly-line nature based on the similarity of the tasks (e.g., propounding discovery requests) to the many other cases filed by counsel that they could have easily been directed by one lawyer to have them spit out by a word processing program. They certainly did not deserve the billing time allocated to them. Nevertheless, giving Plaintiff's counsel the benefit of the doubt, there were tasks that she performed, albeit almost all reviewed and also billed by Mr. Charouhis, which had some value. After a careful review of each time entry, and putting aside the duplicative entries and those improperly lumped together, the Court finds that 25 hours for her is a reasonable amount of time expended in this matter.[7]

---

subsequent Second Verified Supplemental Application for Fees dated July 22, 2004. The Court should not be put to the burden of examining and recalculating items known by Plaintiff to be erroneous.

6.  In *Hensley, supra,* the Court noted that in the private sector, "billing judgment" is an important component in fee setting. Hours that are not properly billed to one's client are not properly billed to one's adversary pursu-

ant to statutory authority. *Id.* at 1939. The fact that the other side is obliged to pay legal fees is not a license to allow the faucet to run indiscriminately.

7.  The Court wishes to make clear that the responsibility for any overbilling, including Ms. Barkus' time, rests solely with Mr. Charouhis, not Ms. Barkus. There is no indication that she was involved in any way with the

### The Fee Application

■ Mr. Charouhis spent 20 to 25 hours on his fee application. His memorandum in support was boilerplate, virtually identical to his other applications in other cases. There is no reason to have spent that much time for this scripted tome. Granted, he had the right to respond to Defendant's memorandum, but his time devoted to that endeavor was disproportionate and unnecessary. He devoted an inordinate amount of time to responding to an irrelevant attack on Plaintiff and his motives, and whether Defendant was improperly victimized. That, of course, allowed him to bill for it. He could have responded in one sentence, saying that the attacks on Mr. Brother's motives were improper and irrelevant, and Defendant cannot claim to be a victim since it agreed to comply with the law.

Plaintiff's unsolicited barrage of supplements to his motion were filed in violation of Local Rule 7.1C, which requires permission of the Court to file any such matter beyond the reply memorandum. Again, the Court finds that much of Mr. Charouhis' work on his own fee application was excessive, redundant, or otherwise unnecessary. Spending 20 to 25 hours to justify having spent 50 or so hours on the case-in-chief (and to a lesser extent the 50 hours spent by Ms. Barkus) is totally out of proportion.[8] After a careful review of all the pleadings and time records, the Court finds 12 hours to be a reasonable amount of time for the fee application. The remainder was excessive or otherwise unnecessary.

### Lodestar Reduction

■ Plaintiff requested a multiplier of 2.25, and then withdrew the request. Multipliers are generally considered appropriate based on the results achieved and the difficulty of the case. As stated earlier, the case was routine in every respect, so much so that Plaintiff's counsel was able to copy the complaint, motions, discovery, and settlement that he has used in countless other cases he has handled for Mr. Brother and other disabled clients.[9] Conspicuously, not one time entry involved legal research, except in connection with Mr. Charouhis' fee application. Furthermore, Plaintiff could have achieved the same result by engaging in early settlement with Defendant, whose counsel claims he was willing to do so and made early offers to resolve the matter amicably.[10] *See* Defendant's Affidavit, which has not been disputed by Plaintiff. Even if Mr. Charouhis is correct that he sought

---

actual billing. To the extent that her time was redundant or unnecessary, it was the responsibility of Mr. Charouhis to write off or adjust the time spent by this young lawyer to assure that those paying legal fees are billed fairly. That is the traditional role of senior attorneys in file and billing management, which Mr. Charouhis demonstrably failed to carry out.

8. For example, in *Loranger, supra,* the court took special note of the fact that counsel had sought compensation for over 100 hours for preparing his fee request even though the trial on the merits consumed only two and a half days. The Court implicitly found this request excessive, even though the entire case involved hundreds of hours.

9. As noted by Judge Presnell, Mr. Charouhis has been counsel in 75 cases in the Middle District in the last three years. And as noted in *Brother v. CPL Inv., Inc.,* 317 F.Supp.2d 1358 (S.D.Fla.2004), Mr. Brother has been the plaintiff in more than 50 cases in this state in the last year.

10. This case bears some similarities to *Brother v. Bank of America, supra,* holding Mr. Charouhis' fees to be excessive, finding that the "defendant had agreed to all of the modifications sought by the plaintiff but nevertheless proceeded to trial because of a disagreement over the attorney's fees."

to advance the settlement process, it appears that the protracted litigation engaged in by Plaintiff's counsel had little or no benefit to the client; it only benefited counsel. Fees may be adjusted downward based on the fact that much of the time expended was of minimal value to the ultimate result since the same or a substantially similar result could have been achieved without the expenditure of much of that time. The Court is permitted to reduce fees if the litigation did not achieve the anticipated results. *Hensley*, 103 S.Ct. at 1941; *Norman*, 836 F.2d at 1302. In this instance, it was not the protracted litigation that achieved the results. The results could have been achieved much more efficiently and far less expensively. *See e.g., Jackson v. Philadelphia Hous. Auth.*, 858 F.Supp. 464, 471 (E.D.Pa.1994) (although plaintiff need not exhaust state administrative remedies before filing an action pursuant to 42 U.S.C. § 1983, "a court may still consider a plaintiff's willful failure to take advantage of an obvious and easy opportunity to obtain relief without litigation, in determining the 'reasonableness' of the attorney fee request").

Furthermore, as Judge Moreno noted in *Brother v. Bank of America, supra*, involving Mr. Charouhis, and quoting from *Glassroth*, 347 F.3d at 920, stated:

> Beyond the expertise of lead counsel, there is another factor the district court should consider in determining whether the number of hours for which compensation is requested may be too high. The time that should be devoted to a case varies directly with the difficulty of the case. It takes more time and effort to stalk beasts in the backwoods than it does to shoot fish in a barrel.

This routine case did not require much stalking, evidenced by the boilerplate na-

ture of all legal tasks performed, including drafting of pleadings, discovery, settlement papers, and the dearth of any legal research other than to support counsel's fee application.

Finally, the Court observes that it has conducted an analysis of Plaintiff's time entries in arriving at a number which represents the reasonable amount of hours expended, noting which hours should be disallowed. Even if the Court were to apply a percentage reduction based on extrapolation from representative sampling of time entries, the result would be the same. And, alternatively, if the Court were to arrive at a figure based solely on a lodestar analysis, i.e., reducing the fee based on considerations adverted to above, the result would still be the same.[11]

### Fee Calculation

Based on the foregoing, the attorneys' fee calculation is as follows:

For Mr. Charouhis, a total of 45 hours at $325 per hour, for a total of $14,625. For Ms. Barkus, a total of 25 hours at $170 per hour, for a total of $4,250. The total for the two attorneys is thus $18,875. In accordance with this Court's Order of January 7, 2004 (D.E. No. 41), the Court imposes sanctions in the form of reduction of fees by the sum of $3,500. Thus, the total attorneys' fee award is $15,375.

### Award of Litigation Expenses and Costs

Mr. Charouhis also requested an award for litigation expenses and costs incurred in this case. Defendant agreed to pay such fees and costs as part of the Consent Decree. *See* Consent Decree at 30–31. There are some items, such as postage and meals, which should be absorbed as general overhead. But once again, it would be a waste of judicial resources for this Court

---

**11.** The Court has considered all the other traditional factors in arriving at a determination of the attorneys' reasonable fees, and they have either been incorporated into the above discussion, or are otherwise irrelevant.

to count all the beans in the bottle. Accordingly, the Court grants the request, and awards Mr. Charouhis the following amounts:

| | |
|---|---|
| Attorneys' Costs: | $1,578.34 |
| Expert's Fees: | 4,070.00 |
| Expert's Costs: | 169.62 |

*See* Verified Application at 19.

WHEREFORE, IT IS **ORDERED AND ADJUDGED** that Plaintiff's Counsel's Verified Application for Final Judgment for Attorneys' and Expert's Fees, Litigation Expenses and Costs (**D.E. No. 46**) is **GRANTED IN PART** and **DENIED IN PART**, as follows:

The Court awards Plaintiff's counsel, William N. Charouhis & Associates, the following amounts:

| | |
|---|---|
| Attorneys' Fees: | $15,375.00 |
| Attorneys' Costs | 1,578.34 |
| Expert's Fees: | 4,070.00 |
| Expert's Costs: | 169.62 |